UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COUNTRY PREFERRED INSURANCE COMPANY, | CASE NO. C11-1779JLR |
| Plaintiff, | ORDER GRANTING SUMMARY JUDGMENT |
| v. | |
| DANE MICHAEL SMITH, et al., | |
| Defendants. | |

This matter comes before the court on Plaintiff Country Preferred Insurance Company's ("Country") motion for summary judgment (Dkt. # 15). Country seeks a declaratory judgment that Dane Michael Smith is not an "insured" under a Country-issued auto insurance policy for purposes of an accident that occurred on March 17, 2011. Having considered the submissions of the parties, the record, and the relevant law, and for the reasons set forth below, the court GRANTS Country's motion for summary judgment.

ORDER- 1

# I. BACKGROUND

This is an insurance coverage action resulting from a fatality traffic accident caused by 32-year-old Dane Michael Smith. Mr. Smith's mother and stepfather, Susan and Shawn Greene,[1] had an auto policy with Country. Mr. Smith was driving the Greenes' car when the accident occurred on the morning of March 17, 2011. The parties now dispute whether Mr. Smith is covered by the Greenes' insurance policy, specifically, whether he is an "insured" under the policy. Under the policy, Mr. Smith is an "insured" only if he (a) resided in the same household as the Greenes, or (b) was operating the insured vehicle with the Greenes' permission or the permission of an adult relative. (See Sharp Decl. (Dkt. # 16) Ex. 9 at 13.) Country moves for summary judgment, alleging that Mr. Smith did not live with the Greenes and that he took the car without their permission. Defendant Heather Arnold, whose husband was killed in the accident, disputes this claim, claiming there are genuine issues of material fact regarding whether Mr. Smith lived with the Greenes and whether he had permission to drive his mother's car. The court agrees with Country and GRANTS summary judgment, finding no genuine factual issues suitable for trial.

## A. Factual History

On the morning of the accident, Mr. Smith arrived at his mother's place of work, a dental office, for a dental appointment. (Id. Ex. 1 at 7.) Mr. Smith had slept only 4 hours the previous night after injecting a gram of heroin (Hunt Decl. (Dkt. # 21) Ex. B at 14.)

---

[1] Mr. and Mrs. Greene are not parties to this action.

He asked his mother if he could borrow her car to go buy a cup of coffee but she responded that he could not. (Sharp Decl. Ex. 1 at 7-8.) When his mother left the room, Mr. Smith took his mother's car keys and phone from her purse and drove off in her 2006 Honda Accord. (Sharp Decl. Ex. 2 at 15-17.) While he was driving on the Bothell-Everett Highway, Mr. Smith swerved out of his lane and into oncoming traffic, colliding with a vehicle driven by defendant Gail Porter Arnold and a vehicle driven by defendant Kimberly Bjorklund. (*Id.* Ex. 7 at 55, 59, 61-62.) Mr. Arnold, whose estate is named in this action, was killed in the crash. (*Id.* Ex. 8 at 65, ¶ 4.)

After the accident, Heather Arnold, the personal representative for Mr. Arnold's estate, contacted Country asserting claims for damages against Mr. Smith, referring to him as Country's insured. (Mot. (Dkt. # 15) at 5-6.) Country responded by seeking declaratory relief under 28 U.S.C. § 2201 that Mr. Smith is not its insured. (Compl. (Dkt. # 1) at 1-2.) Mr. Smith and Ms. Bjorklund did not appear to defend themselves in the action and the court has entered an order of default against them (Dkt. # 14).

**B. The Insurance Policy**

Country issued an automobile insurance policy to Susan and Shawn Greene covering certain damages caused by its "insureds." The policy defines "insured" as:

    1. with respect to an **insured vehicle**:
        a.    **you**[2] and any resident of the same household as **you**;
        b.    anyone using an **insured vehicle** with **your** permission or the permission of an adult **relative**;

---

[2] The policy defines "you" as "the person named as Insured on the declarations page of this policy and that person's spouse if a resident of the same household." (Sharp Decl. Ex. 9 at 12.)

ORDER- 3

      c.    anyone else, but only with respect to liability resulting from acts or omissions of an **insured** as defined in a. or b. above[.]

(Sharp Decl. Ex. 9 at 13.) Thus, the dispositive question on summary judgment is whether Mr. Smith resided with the Greenes or had permission to drive his mother's car.

### C. Mr. Smith's Place of Residence and Permission to Drive his Mother's Car

Country submits several exhibits suggesting Mr. Smith was homeless at the time of the accident. Ms. Greene, in a deposition, denied that Mr. Smith resided with her and Mr. Greene:

> Q: When has Dane lived with you?
> A: Not since he was 16 years old.[3]
>
> . . .
>
> Q: Over the years, Shawn had said he's come and stayed a few times, like at Christmas and stuff like that. . . . How long did he stay during that time?
> A: He would just come out and have dinner, and if he couldn't get a ride home, because we live out, he would spend the night. I would take him in in the morning and someone would come get him.
> Q: Where did he sleep when he stayed there?
> A: On the couch.
>
> . . .
>
> Q: Does he have a key?
> A: A key to what?
> Q: The house.
> A: No.

(Sharp Decl. Ex. 1 at 5-6.) Mr. Smith similarly denies that he lived with the Greenes:

> Q: What was your address as of March 16, 2011?
> A: I was currently homeless. I was homeless at the time.
> Q: Where were you staying? Were you staying on the streets or where had you stayed that night?

---

[3] At the time of the accident, Mr. Smith was 32 years old.

ORDER- 4

> A: I stayed at my friend's house.
>
> . . .
>
> Q: [W]hen was the last time that you had stayed at your mom's house?
> A: Do not remember.
> Q: Was it a couple days before; was it –
> A: No.
> Q: Okay. When you did stay there, like, how long of time periods would you stay there?
> A: It wouldn't be more than a night.
> Q: Do you have a room there or would you, like, stay on the couch?
> A: I would be on the couch.
> Q: Do you have a key?
> A: No, ma'am.
> Q: How did you get in?
> A: They would have to be home.
> Q: How long has it been like that?
> A: Since I can remember.

(*Id.* Ex. 2 at 14, 25-26.) Mr. Greene said the same thing in his deposition:

> Q: Dane has never lived with you?
> A: No.
> Q: Has he stayed the night?
> A: Maybe during Christmas or a holiday. That would be about it.

(*Id.* Ex. 3 at 31.)

The evidence with respect to permission is similarly unequivocal. The summary judgment record contains several exhibits suggesting that Mr. Smith did not have express or implied permission to drive his mother's car on the day of the accident. In his deposition, Mr. Smith denied having permission:

> Q: Can you tell me how you got the car that day, Dane?
> A: I actually took it from her office, without her permission, along with her cell phone.
>
> . . .
>
> Q: Okay. How did you get to the keys that day, Dane?

ORDER- 5

    A: I was supposed to come for dental work in the morning, and I told my mom that I needed to use the bathroom. And I went into her purse and took her phone and her keys and left out the door.
    Q: Where were you headed?
    A: Back to Bothell.
    Q: What were you going to do there?
    A: Probably get drugs.

(*Id.* Ex. 2 at 16-17.) Ms. Greene confirmed this version of events in her deposition:

    Q: What happened?
    A: He's always chatty in the morning, chatting away, How you doing, how you been, you know. And I'm, like, I got to go and get things going. Because I start the office up. So he's, like, Well, let me go get a coffee. I'm, like, There's coffee in the waiting room.
        A lot of times with Dane, that one time of saying no isn't probably going to be the last time, so I just said, you know, Hey, I've got to go get to work. I put my things and went back and started my job and went out about, I don't know, 15 minutes later, because I -- it was time for his appointment, we were ready, and he's not there. So I look at my front desk and go, Where did he go?
    Q: What did they say?
    A: They didn't know. They said, He went outside to have a cigarette and -- you know.
    Q: So when did you notice that your car was gone?
    A: Well, as I was standing talking to my receptionist, I'm looking out into the parking lot, and my car is not there.
    Q: Was that the first time that he had ever done something like that?
    A: Yes.
    Q: Where were your keys at?
    A: They're in my purse at my desk.

(*Id.* Ex. 1 at 7-8.) Ms. Greene also said that Mr. Smith had never used any of her vehicles before, (*id.* at 10), and Mr. Greene confirmed this:

    Q: Did [Mr. Smith] ever drive your guys' vehicles?
    A: No.
    Q: Why do you think he felt okay taking the keys that day?
    A: I guess he had a drug habit.

(*Id.* Ex. 3 at 33.)

## II. ANALYSIS

The parties do not dispute the applicable law, so the only issue before the court is whether there are genuine issues of material fact with respect to Mr. Smith's residence and whether he had permission to drive his mother's car.

**A. Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. The non-moving party "must present affirmative evidence to make this showing." *Id.* Furthermore, as the Ninth Circuit teaches, "[b]ald assertions that genuine issues of material fact exist are insufficient," and a mere scintilla of evidence supporting a party's position is also inadequate. *Id.*

//

//

**B. There is No Genuine Dispute of Material Fact Regarding Mr. Smith's Residence**

As demonstrated by the deposition transcripts quoted above, Country meets its initial burden under *Celotex* of showing there is no genuine issue of material fact about whether Mr. Smith is a "resident of the same household" as the Greenes. Generally, "resident" connotes a living arrangement with some degree of permanence, while "household" means residents "who dwell under the same roof and compose a family." *Gen. Motors Acceptance Corp. v. Grange Ins. Ass'n*, 684 P.2d 744, 747 (Wash. Ct. App. 1984) (internal quotations omitted). In determining whether a person is a resident of a household, Washington courts emphasize whether the "departing person" intends to eat and sleep away from the residence permanently, or only temporarily with the intention of returning. *Nat'l Gen. Ins. Co. v. Sherouse*, 882 P.2d 1207, 1209 (Wash. Ct. App. 1994). Here, the evidence demonstrates that Mr. Smith was by all accounts homeless and did not reside with the Greenes. Ms. Greene, Mr. Smith, and Mr. Greene all testified under oath that Mr. Smith did not live with the Greenes, visited only on holidays, had no keys to the Greenes' house, and did not have a room in the Greenes' house. (Sharp Decl. Ex. 1 at 5-6, Ex. 2 at 14, 25-26, Ex. 3 at 31.) This is sufficient to meet Country's initial burden under *Celotex*, 477 U.S. at 323. Thus, the burden shifts to Ms. Arnold to produce affirmative evidence establishing a genuine dispute of material fact. *Galen*, 477 F.3d at 658.

//

//

//

Ms. Arnold fails to carry her burden. Principally, she presents several unsworn statements and a police report[4] to rebut Country's submissions. However, none of these raise a genuine dispute about any material fact in this case. Ms. Arnold points first to a statement in the police report:

> Smith stated he had then slept for approximately 4 hours at his mother's house [the night before the accident].

(Hunt Decl. (Dkt. # 21) Ex. B at 14.) But even if this unsworn statement suggests that Mr. Smith made inconsistent statements about where slept the night before the accident, it does not establish a genuine dispute about whether Mr. Smith resided permanently with his mother. A residence is "a place to which one intends to return, as distinguished from a place of temporary sojourn or transient visit." *State v. Pickett*, 975 P.2d 584, 586 (Wash. Ct. App. 1999). The possibility of a one-night stay does not raise a genuine dispute about Mr. Smith's residence.

Likewise, Ms. Arnold does not show a genuine dispute of material fact by quoting Mr. Smith's unsworn statement that he had some "stuff" in his mother's car for her to store at her house:

> Q: What did you have in there?
> A: I had stuff to have her take and store at the house, but I don't remember what it would have been.

(Hunt Decl. Ex. D at 21.) The fact that Mr. Smith had some "stuff" in his mother's car does not raise a genuine dispute about whether he resided with his mother. If anything, it

---

[4] In its reply brief, Country moves to strike these submissions as inadmissible hearsay (Dkt. # 22). The court declines to rule on these motions, finding summary judgment appropriate even assuming for the sake of argument that the statements would be admissible at trial.

ORDER- 9

suggests that he *did not* reside with his mother, because if he did, he would not need to give her things to store at her house. He would simply store them there himself.

A party seeking to defeat summary judgment must present more than a mere scintilla of evidence to raise a genuine factual dispute. *Galen*, 477 F.3d at 658. There must be triable issues of fact for the jury. Even considering all evidence in the light most favorable to Ms. Arnold, that standard is not met here with respect to Mr. Smith's residence.

**C. There is No Genuine Dispute of Material Fact Regarding Whether Mr. Smith Had Permission to Drive his Mother's Car**

Ms. Arnold similarly fails to carry her burden with respect to whether Mr. Smith had permission to drive his mother's 2006 Honda Accord on the day of the accident. As above, the uncontroverted deposition testimony meets Country's initial burden to show there is no genuine dispute of material fact.

In the insurance context, permission can be either express or implied. Express permission must be "of an affirmative character, directly and distinctly stated, clear and outspoken, and not left merely to inference." *McKee v. Garrison*, 221 P.2d 514, 515 (Wash. 1950). On the other hand, implied permission is "not confined to affirmative action, but means an inferential permission, in which a presumption is raised from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent. Such implied permission is usually shown by usage and practice of the parties over a period of time . . . ." *Id.*

//

Here, Country presents direct deposition testimony showing that Mr. Smith did not have express permission to drive the car. Mr. Smith testified that he took his mother's car "without her permission," saying that he told his mother that he "needed to use the bathroom," and that he "went into her purse and took her phone and her keys and left out the door." (Sharp Decl. Ex. 2 at 16-17.) His mother also testified that she told him not to take the car but to get coffee from the waiting room instead of driving to buy coffee. (*Id.* Ex. 1 at 7-8.) Country also meets its initial burden of showing that Mr. Smith did not have implied permission—both Mr. and Ms. Greene testified under oath that Mr. Smith had never driven their car before. (*Id.* Ex. 1 at 10, Ex. 3 at 33.) Thus, there was no course of conduct or relationship of mutual acquiescence that could establish implied permission, particularly in light of the fact that Mr. Smith had asked for and been denied permission minutes before he took the car. (*Id.* Ex. 1 at 7-8, Ex. 2 at 16-17.) Country's submissions shift the summary judgment burden to Ms. Arnold.

Again, Ms. Arnold fails to carry her burden. She draws the court's attention to several statements by Ms. Greene that Ms. Arnold believes raise factual issues about implied permission. None do. First, she points to an unsworn interchange between Ms. Greene and a Country representative that Ms. Arnold believes implies Dane had his mother's car early on the morning of the accident:

> Q: You parked [the car] at 6:30 and then you came out hmm, when, when did you notice it or who noticed it missing?
> A: Well, my son, Dane had it for an appointment at my office for some dental work.

ORDER- 11

(Hunt Decl. Ex. A at 5.) In her deposition, Ms. Greene testified that this statement was transcribed in error. (Resp. to Mot. (Dkt. # 19) at 7.) But even if it were not, the most that could possibly be inferred from this statement is that Mr. Smith "had" the car at some point on the morning of the accident. And even if he did, Ms. Arnold does not come close to establishing the kind of "course of conduct" or "relationship of mutual acquiescence" that is required to establish implied permission. *See* McKee, 221 P.2d at 515. Thus, this statement does not establish a genuine issue of material fact. In any event, even if Mr. Smith "had" the car with permission at some point on the morning of the accident, his mother expressly denied him permission immediately before he drove the car, and an express denial of permission voids any grant of implied permission. *State Farm Fire & Cas. Co. v. Martin*, 869 P.2d 79, 82 (Wash. Ct. App. 1994).

Next, Ms. Arnold highlights a statement by Ms. Greene suggesting her son had used her car before:

> Q: Okay now has he, he taken the vehicle before?
> A: No, not that, not, I mean he's had my car before.
> Q: But never taken it without permission?
> A: Correct.

(Hunt Decl. Ex. A at 6.) Ms. Greene explained this statement in her deposition:

> Q: Had he ever used any of your vehicles before?
> A: No.
> Q: In your statement, they ask you, say, Okay, now, he -- has he taken the vehicle before -- okay, now, has he -- he taken the vehicle before?
>     And the answer is, No, not that -- not that I -- I mean, he's had my car before.
> A: Well, no, he -- he didn't have my vehicle. That was -- that -- my son never drove a car I had. From the time he was 16 years old -- I did not send him to driver's ed, I did not have him get a license or help him get

> a license. It was a joke of him asking, Oh, can I borrow the car? And it's, like, Seriously? It was a nonissue because . . . .

(*Id.* Ex. C at 18.) Even taking Ms. Greene's original unsworn statement as true, this does not raise a genuine factual dispute about implied permission. Once again, the mere fact that Mr. Smith may have "had" Ms. Greene's car before at some unspecified point in the past does not come close to establishing the kind of regular course of conduct or relationship of mutual acquiescence required to show implied permission.

More to the point, Ms. Greene's express denial of permission minutes before Mr. Smith took the car voids any hypothetical prior grant of express or implied permission. *Martin*, 869 P.2d at 82. This is because permission is determined based on the objective belief of the insured. *Id.* Both Ms. Greene and Mr. Smith testified directly that they believed Mr. Smith did not have permission to drive the car. (Sharp Decl. Ex. 2 at 16-17.; *id.* Ex. 1 at 7-8.) Thus, even if Ms. Arnold could establish that Mr. Smith had implied permission to drive Ms. Greene's car, he did not have permission that day because Ms. Greene did not believe he did, and neither did he. (*Id.*)

At oral argument on this motion, counsel for Ms. Arnold raised a new argument that was not in the briefing. Ms. Arnold argued that Ms. Greene gave Mr. Smith express permission to drive her car, but that she did so over the phone. Indeed, Ms. Greene did say that she called her son on the phone while he was driving on the morning of the accident:

> Well, then I, then about ten about after 7:00, I, I called my cell phone, he picked it up and he said I'll be right there and hung up and we waited and waited and he never came and then all day I kept dialing my phone and no

ORDER- 13

answer, no answer and hmm, by the end of the day I thought you know he'd come back.

(Hunt Decl. Ex. A at 5.) However, there is no suggestion whatsoever in the record that Ms. Greene gave her son permission to drive her car during this conversation. In fact, as the above quote suggests, Mr. Smith simply answered the phone, said "I'll be right there," and hung up. (*Id.*) Ms. Arnold alleges that more was said in this conversation, but this is pure speculation unsubstantiated by any evidence. A jury may not speculate in the jury room and neither may we on summary judgment; just like the jury, we are permitted to draw only those inferences which are reasonably supported by the evidence. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

Even construing Ms. Arnold's evidence in the light most favorable to her, she does not meet her burden to establish a genuine dispute of material fact.

**D. Country is Entitled to Judgment as a Matter of Law**

The parties do not dispute that Mr. Smith is not an "insured" if it can be established that he did not reside with the Greenes and did not have permission to drive his mother's car. Ms. Arnold fails to meet her burden to show there is any genuine dispute of material fact, so Country is entitled to a judicial declaration that Mr. Smith is not its "insured" under the Greenes' auto policy for purposes of the accident at issue in this case.

//
//
//

ORDER- 14

### III. CONCLUSION

For the foregoing reasons, the court GRANTS Country's motion for summary judgment (Dkt. # 15).

Dated this 11th day of October, 2012.

JAMES L. ROBART
United States District Judge

ORDER- 15